BOLIN, Judge.
This is an action by Ideal Building Materials, Inc., for damages to 29 window screens which it shipped by defendant, Her-rin Transportation Company, from the latter’s Lafayette terminal to Shreveport. From judgment in plaintiff’s favor for $408.10 it appeals, asking for an increase in the award to the sum of $1667.87.
These screens were custom-made and had been manufactured by plaintiff for Weill Construction Company, Inc., of Lafayette for installation in a new jail being constructed at Crowley. After the screens had been installed on the building, the architect discovered some had pulled loose from the aluminum frames and he therefore ordered them all removed and sent back to plaintiff’s factory. Shortly thereafter the supervisor of carpenters for Weill removed the screens from the building and transported them in a pickup truck from Crowley to Lafayette where they were crated by him for shipment to plaintiff’s factory at Shreveport. It is conceded there were no separators between the screens when they were trucked from Crowley to Lafayette nor when they were crated. The shipment, consisting of four crates, was picked up from Weill’s company yard in Lafayette by one of defendant’s truck drivers who took the crates to Herrin’s warehouse in Lafayette from whence, in due course, they were transported by defendant to Shreveport. Upon arrival in Shreveport plaintiff, the consignee, immediately discovered the screens were damaged and made claim against defendant for the contract price thereof plus the freight charges for transferring them back to Shreveport.
Plaintiff claims the screens were delivered to defendant carrier in good condition; that the only reason they were being returned by Weill to plaintiff’s factory was because they would not stay in the frames; and that this condition did not adversely affect their value. Plaintiff further alleges that if the crating used to ship the screens was inadequate to protect them from damage this fact was known or should have been known by defendant when it accepted them for shipment.
Each screen had two separate panels of louvered, bronze wire with black backing set *422 in “alumilite” frames, the fine finish of which is soft and highly susceptible to marring by scratching. It is undisputed that, with the exception of one panel, all were so damaged upon arrival at plaintiff’s factory in Shreveport as to make them a total loss. Five panels contained holes in the screens when they were removed from the jail building and such damage is therefore not attributable to defendant.
Plaintiff’s witness testified that when these screens were first delivered to Weill Construction Company they were placed on their truck with wood separators to keep the screens apart and from hitting each other and getting the finish damaged on the rails. He further testified that when the screens were returned no separators were used in the crates and that the hardware on the screens rubbing against each other could have caused a considerable part of the damage to the frames. The crates prepared by Weill Construction Company were of 2 x 4’s for the frames with cross pieces at intervals. We conclude the scratching and scarring to the frames was not actually discernible to the carrier, nor to the consignee, without removal of the crates.
The district judge in his written reasons for judgment concluded all the bronze wire in the screens, except five panels, was damaged while in transit, but that the “alumi-lite” frames were damaged when they were hauled in the Weill pickup truck from Crowley to Lafayette, and that the frames were further scarred and scratched when they were improperly crated by Weill for shipment. He therefore gave judgment for $408.10, representing the actual value of 53 panels without any award for labor or for tb,e frames.
We think it unnecessary to outline and comment upon the testimony of the many witnesses on trial of the case. Suffice it to say that after a careful examination of the entire record we agree with the court below that plaintiff failed to show by a preponderance of evidence the frames were in good condition when delivered to the carrier and, consequently, under the holding of Yuspeh v. Acme Freight, 222 La. 747, 62 So.2d 743, one prerequisite for recovery by plaintiff is absent insofar as the frames are concerned.
However, uncontradicted testimony was introduced to show that the cost of repairing each panel, including labor and material, was $14.58. Inasmuch as it was shown five panels were damaged prior to delivery to the carrier and one panel arrived undamaged we conclude plaintiff has proved the damage to 52 panels was caused by defendant’s negligence. This would have necessitated, even had the frames not been damaged, replacement cost of $14.58 each and therefore plaintiff is entitled to such costs totaling $758.16. The law covering this portion of the case is LSA-Civil Code Article 2754 which provides:
“Carriers and waterman (watermen) are liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events.”
In computing the measure of damages for injury to property shipped we are not unmindful of the general rule allowing recovery of the difference between the value at the time and place of delivery in an uninjured condition and the value in the depreciated condition in which the property is actually delivered. However, since it was shown that these custom-made screens had no market value at their destination we think the exception to the general rule is applicable. As stated in Piazza v. Louisiana & Arkansas Ry. Co., (La.App.Orl.1950) 46 So.2d 670:
“However, the market value of the goods at the place of destination is not the sole criterion for assessing damages against the carrier, for in countless freight movements, goods having, no market value are transported, and in such cases the liability of the carrier *423 is to be gauged by the intrinsic or actual value of the goods to the owner.
“ ‘Where there is no market value for the property at the point of destination, the intrinsic or actual value is the basis for determining the amount of damages sustained by reason of loss of, or injury to, such property, * * 13 C.J.S., Carriers, § 264, p. 614.”
For the reasons assigned the judgment appealed from is amended by increasing the award from $408.10 to $758.16, and as thus amended is affirmed at defendant’s cost.
Amended and affirmed.